UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BASRA D. MOHAMED, | CASE NO. C22-1010-KKE |
| Plaintiff(s), | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| FULL LIFE CARE, et al., | |
| Defendant(s). | |

Plaintiff Basra Mohamed was employed by Defendant Full Life Care as a mental health services coordinator from January 2020 until her employment was terminated in October 2021. Mohamed filed this lawsuit in 2022, alleging that Full Life Care and its affiliate, Defendant Transforming Age, failed to reasonably accommodate her request for a religious exemption to its COVID-19 vaccine requirement and that Defendants retaliated against her for requesting a religious exemption by terminating her employment, in violation of Title VII. Dkt. Nos. 1, 21. Defendants moved for summary judgment. Dkt. No. 150. Because Defendants have met their burden on summary judgment to show that they are entitled to judgment as a matter of law, and Mohamed has failed to show that an issue of fact remains for trial, the Court will grant Defendants' motion and enter judgment for Defendants.

//

//

## I. BACKGROUND

Defendants are two Washington not-for-profit organizations serving the elderly and/or people with chronic or terminal illnesses and disabilities. Dkt. No. 147 ¶¶ 3–4. Full Life Care hired Mohamed in January 2020 to serve as a mental health services coordinator, providing essential services to Seattle Housing Authority's residents. Dkt. No. 149 ¶¶ 3–4, Dkt. No. 149-1. Mental health services coordinators' duties include visiting residents in their homes, attending monthly meetings in a space shared with Full Life Care's Adult Day Health program for adults with medical or disabling conditions, and participating in other in-person staff meetings. *See* Dkt. No. 147-4 at 3; Dkt. No. 149 ¶¶ 5, 7.

In response to guidance from the Center for Disease Control and the Governor of Washington, Transforming Age notified its employees and the employees of its affiliates, including Full Life Care, in August 2021 that they would need to be fully vaccinated against COVID-19 (or have a vaccination exemption approved) by October 15, 2021, or else they would be terminated. Dkt. No. 147-1, Dkt. No. 148 ¶¶ 3–4, Dkt. No. 148-1, Dkt. No. 148-2. Transforming Age also explained how to request an exemption. Dkt. No. 148-3.

Mohamed requested a vaccine exemption based on her religious beliefs on September 21, 2021. *See* Dkt. No. 147-2. Transforming Age created a panel to review exemption requests, and the panel considered Mohamed's request. Dkt. No. 147 ¶ 8. Transforming Age's Vice President of People exchanged a number of emails with Mohamed regarding her exemption request, before and after Mohamed's request was denied on September 29, 2021. *See* Dkt. Nos. 147-3, 147-4, 147-5. Mohamed submitted additional information to support her exemption request on October 16, 2021, after the deadline to request an exemption. *See* Dkt. No. 147 ¶ 16, Dkt. No. 147-6. Full Life Care notified Mohamed that because her exemption request was not approved, and because

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 2

she did not receive the vaccine by the deadline, her employment would be terminated. Dkt. No. 149-4. Mohamed's termination was processed on October 18, 2021. Dkt. No. 149-5.

Mohamed filed a charge of discrimination against Full Life Care with the Equal Employment Opportunity Commission ("EEOC") and other governmental bodies, and the EEOC issued a right-to-sue letter in March 2022. Dkt. Nos. 12-1, 12-2, 12-3. Mohamed filed this lawsuit against Full Life Care and Transforming Age in July 2022 and amended her complaint most recently in December 2022, challenging her termination under Title VII. Dkt. Nos. 1, 21. Defendants filed a summary judgment motion in August 2024, and Mohamed filed an untimely and overlength opposition in October 2024. Dkt. Nos. 150, 168. For the reasons explained herein, the Court finds that Defendants have met their burden to show that the Court should grant their motion for summary judgment.

## II. ANALYSIS

### A. Legal Standards on Summary Judgment

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims[,]" so that "factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). In resolving a motion for summary judgment, the court considers "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[T]here is no issue

for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id*. at 249.

**B.     Mohamed's Reasonable Accommodation Claim Fails Because Defendants Have Presented Unrebutted Evidence Showing That the Requested Accommodation and Any Alternative Would Cause Undue Hardship.**

Title VII requires "employers to accommodate job applicants' religious beliefs unless doing so would impose an undue hardship." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1222 (9th Cir. 2023). "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate [] an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

In order to prevail on a claim for religious discrimination based on a failure to accommodate, a plaintiff must set forth a prima facie case that

> (1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement.

*Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004) (citing *Heller v. EBB Auto. Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)).

> Once an employee establishes a prima facie case, the burden of proof then shifts to the employer under the second part of the framework to "establish that it initiated good faith efforts to accommodate the employee's religious practices or that it could not reasonably accommodate the employee without undue hardship."

*Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) (quoting *Heller*, 8 F.3d at 1438).

Here, even if the Court assumes that Mohamed had set forth a prima facie case of discrimination based on a failure to accommodate, Defendants have met their burden to show that any reasonable accommodation would have caused an undue hardship. Because Mohamed's job duties required her to interact with elderly and medically vulnerable adults (*see* Dkt. No. 147-4 at

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

3, Dkt. No. 149 ¶¶ 5–7, Dkt. No. 149-1), allowing Mohamed to remain unvaccinated would have put her clientele at risk and exposed Defendants to liability.[1] Defendants have offered evidence that other alternatives—such as periodic testing, masking, or eliminating the in-person component of Mohamed's job—would have either failed to adequately protect Defendants from liability for exposing their clients to harm or would have been cost-prohibitive in the context of Defendants' business. *See* Dkt. No. 147 ¶¶ 10–12, Dkt. No. 148 ¶¶ 7–10. The in-person parts of Mohamed's job were required by Defendants' contract with the Seattle Housing Authority, and Defendants would have had to hire an additional employee to perform those parts of Mohamed's job if she was exempted from performing them.[2] Dkt. No. 149 ¶ 12. Furthermore, there were no other positions open at Full Life Care for which Mohamed was qualified, and her employment could not have been maintained in a different position. Dkt. No. 149 ¶ 14. The evidence Defendants have submitted amply supports a finding of undue hardship. *See White v. Univ. of Wash.*, No. 2:22-cv-01798-TL, 2024 WL 1241063, at *8 (W.D. Wash. Mar. 22, 2024) ("With respect to COVID-19 in particular, guidance from the EEOC indicates that increasing the risk of the spread of COVID-19 to other employees or to the public is a ground for finding undue hardship on employers asked to grant religious exemptions to COVID-19 vaccination mandates." (quoting *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1180 (9th Cir. 2021))).

---

[1] Although Mohamed's opposition emphasizes that she may not have been subject to a vaccine mandate imposed by the State of Washington because she was not a healthcare provider (Dkt. No. 168 at 7), Defendants do not argue that they were required by the Governor to impose a vaccine mandate. They provided evidence indicating that they elected to impose a vaccine requirement after reviewing guidance from multiple sources. *See* Dkt. No. 147-1, Dkt. No. 148 ¶¶ 3–4, Dkt. No. 148-1, Dkt. No. 148-2.

   That Seattle Housing Authority apparently granted Mohamed a religious exemption from its vaccine mandate in a subsequent position (Dkt. No. 168 at 20) does not bear on whether Defendants would experience an undue hardship if they had granted Mohamed's exemption request, given that the record does not contain any evidence establishing similarity between the businesses or the jobs at issue.

[2] Although Mohamed was allowed to perform her job entirely remotely during an earlier phase of the COVID-19 pandemic (*see* Dkt. No. 151-1 at 35–36), by the time Defendants imposed their vaccine requirement, their employees (including Mohamed) had returned to working in person at least some of the time. *See* Dkt. No. 147-4 at 3, Dkt. No. 149-4 at 4–5.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

Defendants' evidence that supports a finding of undue hardship is unrebutted in the record before the Court, and the Court therefore finds that Defendants have met their burden to show that there is no dispute of fact that would preclude entering judgment in their favor on the claim for failure to accommodate.

**C.    Mohamed's Retaliation Claim Fails Because She Has Not Shown a Nexus Between Her Accommodation Request and Her Termination and Because Defendants Have Offered Unrebutted Evidence that She was Terminated for Non-Discriminatory Reasons.**

Under Title VII, an employer may not discriminate against an employee if the employee "has opposed any practice made an unlawful employment practice by this subchapter, or because [he or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).  A plaintiff alleging a Title VII retaliation claim must first adequately allege that (1) he or she engaged in an activity protected under Title VII, (2) he or she suffered an adverse employment action, and (3) there was a causal link between the protected activity and the adverse employment action.  *See Kama v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).  If a plaintiff can establish a prima facie case of retaliation, then the burden shifts to the defendant "to articulate 'some legitimate, nondiscriminatory reason for the challenged action.'"  *Id.* (quoting *Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023)).  "If such a reason is asserted, then the burden shifts back to the plaintiff to show that the asserted reason is merely a pretext for retaliation." *Id*.

Mohamed's complaint alleges that Defendants retaliated against her by terminating her in response to her request for a religious accommodation. Dkt. No. 21 ¶¶ 56–59.  Defendants argue that Mohamed's retaliation claim fails because she "cannot demonstrate a causal link between her accommodation request and her termination."  Dkt. No. 150 at 23.  Instead, Defendants cite evidence of their vaccine policy, which informed employees that if they were not vaccinated by

the deadline and did not have an approved exemption, their employment would be terminated. According to Defendants, Mohamed was terminated under that policy because she was not vaccinated and did not have an approved exemption.

Even if the Court were to assume that the temporal proximity between Mohamed's accommodation request and her termination was sufficient to establish a causal nexus, Mohamed has failed to present or cite to any evidence suggesting that Defendants' stated reason for terminating her employment was a pretext for retaliation. That Defendants evaluated Mohamed's exemption request and provided several non-discriminatory reasons why it could not be granted supports their assertion that Mohamed was terminated for legitimate reasons. *See* Dkt. No. 147 ¶¶ 8, 10–12; Dkt. No. 148 ¶¶ 7–10; Dkt. No. 149-4. Because Defendants have presented "abundant and uncontroverted independent evidence" supporting their non-discriminatory motive, Defendants are entitled to summary judgment on Mohamed's retaliation claim. *See Opara*, 57 F.4th at 724.

D. **Mohamed has Abandoned Other Claims in the Second Amended Complaint.**

Although Mohamed's complaint lists other claims (Dkt. No. 21 ¶¶ 51–55, 60–68), she acknowledged at her deposition that they were either duplicative or abandoned (Dkt. No. 151-1 at 15–22). To the extent that she attempts to amend her complaint in her opposition to Defendants' summary judgment motion (Dkt. No. 168 at 20–31), this amendment is untimely. *See* Dkt. No. 32 (setting May 4, 2023, as the deadline for amending pleadings). Mohamed has had many opportunities to amend her complaint. *See, e.g.*, Dkt. No. 58 (order denying Mohamed's motion for leave to file a third amended complaint: directing her to comply with the local rules and refile her motion for leave to amend no later than October 16, 2023). She will not be permitted to do so now, at this stage of the proceeding, without any attempt to show good cause to explain the

untimeliness. *See Amaker v. King Cnty.*, 479 F. Supp. 2d 1151, 1157 (W.D. Wash. 2007) ("Plaintiff cannot amend her complaint in the context of opposing summary judgment.").

### E. Mohamed has Failed to Meet Her Burden to Show the Need for Further Discovery.

Mohamed's opposition brief contains a request for a continuance so that she can conduct additional discovery (Dkt. No. 168 at 31–32), but her request does not identify what information she needs to obtain, nor does it provide "specified reasons" why she has not been able to obtain that information to date. *See* Fed. R. Civ. P. 56(d). The Court therefore finds that Mohamed's Rule 56(d) request is incomplete, and it is denied.

### F. Mohamed's Request for Appointment of Counsel or Stay is Denied.

Mohamed's opposition brief renews her request for appointment of counsel or a stay to allow her to obtain representation. Dkt. No. 168 at 32. As the circumstances have not changed since the most recent time that the Court denied this request (*see* Dkt. No. 164), the Court again denies it.

### III. CONCLUSION

For these reasons, the Court GRANTS Defendants' motion for summary judgment. Dkt. No. 150. The clerk shall enter judgment for Defendants and close this case.[3]

Dated this 2nd day of October, 2024.

Kymberly K. Evanson
United States District Judge

---

[3] Mohamed filed a motion to exclude Defendants' experts (Dkt. No. 154) that is DENIED as moot, given the disposition of Defendants' motion for summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8